UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**
99 DEC -3 PM 2:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

VICQUILLA GARTH,      )
                      )
   Plaintiff,         )
                      )
vs.                   )  Civil Action No. CV-99-S-1687-NE
                      )
WILLIAM P. ROBINSON,  )
                      )
   Defendant.         )

**ENTERED**
DEC -3 1999

## MEMORANDUM OPINION

This action is before the court on defendant's amended motion to dismiss plaintiff's claim under 42 U.S.C. § 1983. Defendant argues he is entitled to qualified immunity. Upon consideration of the motion, briefs, evidentiary submissions, and pleadings, this court finds that defendant's motion is due to be denied.

### I. INTRODUCTION

In actions bottomed upon section 1983,[1] the affirmative defense of "qualified immunity" may provide state governmental officials performing discretionary functions two protective

---

[1] 42 U.S.C. § 1983, enacted by Congress in 1871 as section 1 of the "Ku Klux Klan Act," imposes liability only upon those persons who act "under color of" state law. The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

screens. On one hand, the doctrine constitutes a defense to liability when the actions committed by the governmental official do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "If the law was not clearly established when officials acted, qualified immunity bars an award of [monetary] damages, but it does not preclude the granting of injunctive relief." Karen M. Blum & Kathryn R. Urbonya, *Section 1983 Litigation* 81 (1998) (citing *Behrens v. Pelletier*, 116 S.Ct. 834, 842 (1996)).

On the other hand, qualified immunity also may provide state governmental officials with — as the Supreme Court described it in *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) — "immunity from suit." That is, the doctrine "provides the right not to be burdened by trial." *Tinney v. Shores*, 77 F.3d 378, 380 (11th Cir. 1996). Perhaps more importantly, it unyokes the governmental official from the burdens of the pre-trial discovery process and the unnecessary expenditure of substantial sums in the payment of attorney fees. For such reasons, district courts are instructed to determine whether a governmental official is entitled to qualified immunity at an early stage in the proceedings by resolving two

2

issues: first, to decide whether the plaintiff has stated a claim for the deprivation of a statutory or constitutional right; and, if so, to then "proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, __ U.S. __, 110 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). In other words, the district court

> must first determine whether the facts, read in the light most favorable to [the plaintiff], establish that [a defendant's] actions deprived her of any statutory or constitutional rights. If the answer is "yes," [the court] must then consider whether those rights were clearly established at the time of the events in [the] case.

*Hartley v. Parnell*, No. 98-6829, 1999 WL 979614, at *3 (11th Cir. Oct. 28, 1999).[2] Each of these issues is addressed below.

## II. DISCUSSION

**A. Has Plaintiff Stated a Claim for the Deprivation of a Statutory or Constitutional Right?**

Plaintiff's claim arises out of an alleged violation of the Fourth Amendment by defendant. She claims that defendant, while acting under color of state law, used excessive force and unlawfully seized her. (*See* Amended complaint ¶ 13.) The facts

---

[2] "Deciding the constitutional question before addressing the qualified immunity question ... promotes clarity in the legal standards for official conduct." *Wilson v. Layne*, __ U.S. __, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that the right violated was not clearly established at the time of the offense).

3

bearing upon this contention, read in the light most favorable to plaintiff, are summarized below.

Plaintiff attended a basketball game at Brookhaven Middle School in Decatur, Alabama, on February 6, 1998, in part for the purpose of supporting her daughter, one of the cheerleaders for the Brookhaven basketball team. (See id. ¶ 6.) The Decatur City School Board employed defendant — who in his "day job" is a police officer with the Decatur Police Department — to work after hours as a security guard at various Board of Education events, such as the basketball game at which the events leading to this action took place. (See id. ¶ 7; Robinson aff. ¶¶ 2-3.) Defendant wore his official police uniform while working at the game. (See Amended complaint ¶ 7.)

Once inside the gymnasium, plaintiff selected a bleacher seat that, unbeknownst to her, was in a located preferred by defendant's relatives and friends. (See id. ¶ 8.) Defendant's wife demanded that plaintiff move. (See id.) Plaintiff refused, because the gymnasium was crowded and she "had no where [sic] to move." (Garth aff. ¶ 4.) According to plaintiff, defendant's deprivation of her Fourth Amendment rights occurred after she refused his wife's demand:

4

[Defendant] came in and ordered [plaintiff] out of the gym. At the time that the [defendant] attempted to throw [plaintiff] out of the game, she was sitting peaceably in the bleachers watching the game. After [plaintiff] refused to leave, he told her that she could either walk out or that he would "drag her out." The officer took off his coat and got down in [plaintiff's] face and continued to order her and threaten her. Robinson grabbed [plaintiff] by the arm and started trying to pull her out of the stands.[3] Because the officer was using force and creating an embarrassing spectacle, [plaintiff] began to walk out of the gym. [Plaintiff] believed that she had no choice but to comply with Robinson's demands. Another officer told [plaintiff] that she could return to the game after he learned what had happened.

(Amended complaint ¶ 9.)

To establish a Fourth Amendment violation based on unreasonable force, plaintiff must allege that: (1) in using force, the defendant "seized" her within the meaning of the Fourth Amendment; and (2) that the force applied by defendant was objectively unreasonable. *See Graham v. Connor*, 490 U.S. 386, 395-96, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989).

The Supreme Court has defined "seizure" for purposes of the Fourth Amendment in the following three ways:

> 1. Whether "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." [*Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).]

---

[3] In her affidavit, plaintiff also alleges Robinson said she "'was not moving fast enough for him'" once he grabbed plaintiff's arm and began escorting her out of the gymnasium. (Garth aff. ¶ 5.)

5

> 2. Whether a "reasonable person would have believed that he was not free to leave" and the person in fact submitted to the assertion of authority. [*California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (citations omitted).]
>
> 3. Whether there was "a governmental termination of freedom of movement through means intentionally applied." [*Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989).]

Karen M. Blum & Kathryn R. Urbonya, *Section 1983 Litigation* 27-28 (1998). If a plaintiff establishes a Fourth Amendment "seizure" under any one of the three definitions above, the court must next analyze whether this seizure was objectively unreasonable.

In *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872, the Supreme Court emphasized that the test for objective unreasonableness is fact-intensive, and that courts should look at the following factors: "the severity of the crime at issue, whether [plaintiff] poses an immediate threat to the safety of others, and whether [plaintiff] is actively resisting arrest or attempting to evade arrest by flight." A showing of bad faith on the part of the defendant is not required. *See id.* at 397, 109 S.Ct. at 1872.

With the foregoing standards in mind, this court finds that plaintiff has alleged a Fourth Amendment violation based on defendant's excessive force in removing her from her seat at the basketball game. Given the facts alleged, and plaintiff's claim

6

"that she had no choice but to comply with Robinson's demands," she meets any of the three definitions of seizure listed above.

Further, plaintiff's allegations reveal that defendant's conduct was objectively unreasonable. The factors articulated by the Supreme Court in *Graham* compel this conclusion. Although *Graham* focused specifically on the treatment of a suspect by a police officer, the analysis is relevant here. Simply put, defendant had no reason to remove plaintiff from the gymnasium, according to the allegations in her complaint. Like numerous other spectators that evening, plaintiff simply had selected a seat from which to watch her child's participation in a sports event. She engaged in no "offensive" conduct, other than sitting near some of his relatives and friends, and certainly that unfortunate action did not necessitate the reaction of the defendant. While bad faith is not a requisite element of a claim of excessive force under the Fourth Amendment, defendant's conduct here seems to fit the bill. As alleged, defendant's conduct constitutes an objectively unreasonable seizure under the Fourth Amendment.

**B. Was the Fourth Amendment Right that Defendant Allegedly Violated Clearly Established?**

As stated earlier, a state official like defendant "is entitled to qualified immunity if his conduct 'does not violate

7

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smith v. Mattox*, 127 F.3d 1416, 1419 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In *Smith*, the Eleventh Circuit elaborated on the "clearly established" portion of the qualified immunity standard:

> A reasonable official's awareness of the existence of an abstract right, such as a right to be free of excessive force, does not equate to knowledge that *his* conduct infringes the right. Thus, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive. Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, <u>an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw</u>.

*Smith*, 127 F.3d at 1419 (<u>emphasis</u> added); *see also Post v. City of Fort Lauderdale*, 7 F.2d 1552, 1559 (11th Cir. 1993) (in analyzing whether forced employed by police officer was excessive, court should focus on "the need for force, the amount of force used, and the injury inflicted").

Based on the allegations in plaintiff's complaint, defendant's violation of plaintiff's Fourth Amendment rights was obvious and

8

reasonably apparent. As a full-time police officer, defendant could not have perceived that there was any need for force at all, given plaintiff's description of the situation.

Plaintiff's "neck and shoulder were strained" from defendant's actions. (Amended complaint ¶ 10.) While the amount of force used and injury inflicted appear to be slight compared with other cases,[4] the fact that defendant forcibly removed her from the gymnasium indicates a violation of clearly-established law. Given the circumstances, <u>any</u> injury allegedly resulting from defendant's conduct is actionable under section 1983, as a violation of the Fourth Amendment.

Defendant cannot justify his treatment of plaintiff under any legal standard. Plaintiff participated in no criminal activity or otherwise disruptive behavior that may have warranted use of force by the defendant, in his capacity as a municipal law enforcement official. Put simply, defendant had no reason to be suspicious of her conduct, and certainly no reason to remove her forcibly from her seat. *See generally Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

### III. CONCLUSION

Plaintiff has articulated a violation of the Fourth Amendment

---

[4] *See, e.g., Smith*, 127 F.3d at 1418 (defendant broke plaintiff's arm).

based on defendant's excessive force.  Because a violation of the Fourth Amendment was readily apparent from defendant's allegedly unlawful conduct, he is not entitled to qualified immunity at this stage in the proceedings.  An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **3rd** day of December, 1999.

_____
United States District Judge

F:\WPdocs\Smith\Judge\Qualified immunity 99-1687